BOOTH v. SPUYTEN DUYVIL ROLLING MILL COMPANY, appellant.

*Contract — breach caused by inevitable accident — Damages — when profits recoverable as.*

Where a contract, for the manufacture and delivery of an article within a specified time, is absolute and unqualified in its terms, and, at the time when made, it is not impossible to perform it, performance will not be excused by the occurrence of an inevitable accident or other contingency, although it was not foreseen by, nor within the control of, the contracting party.

Defendant agreed to make and deliver to plaintiff one hundred tons of steel caps for rails on or before the 1st of April, 1868, with the notice that they were wanted to enable the plaintiff to fulfill a contract he had made to supply four hundred tons of rails, of which the caps were to form a part. The defendant failed to perform its contract within the time specified, being unable to do so in consequence of the destruction of its mill by fire; and the plaintiff was thereby prevented from performing his contract. *Held*, (1) that the defendant was liable to pay such damages as the plaintiff had sustained by reason of such breach of contract; and (2) that, as part of such damages, the plaintiff was entitled to recover the *profits* which he would have made out of his own contract had the defendant performed its agreement.

APPEAL from a judgment entered upon the report of a referee. The action was brought by Jonathan L. Booth to recover damages for the failure of the defendant to perform its contract to furnish one hundred tons of steel caps for rails by the 1st of April, 1868.

The plaintiff was engaged in the manufacture of a rail, composed of an iron base and a steel cap, known as the Booth patent rail, upon which rail these caps only could be used, and in October, 1867, made a contract with the New York Central Railroad Company, by which that company agreed to take from him four hundred tons of his rails at $135 per ton, during the spring of 1868. The defendant, on the 20th day of December, 1867, by a written

Booth v. Spuyten Duyvil Rolling Mill Co.

contract, agreed to make and deliver to plaintiff one hundred tons of steel caps for rails; to be made according to a specified pattern; to be delivered on or before the 1st day of April, 1868. The one hundred tons of caps were sufficient for the manufacture of the four hundred tons of rails, and were intended for that purpose; and if the defendant had furnished the one hundred tons of caps by April 1st the plaintiff could have filled the contract with the New York Central Railroad Company before the 1st of June. On that contract his profits would have been $22.75 per ton, or $9,100 in all.

On the 18th of March, 1868, the defendant's mill was destroyed by fire, and the defendant failed to furnish any of the caps by April 1. There was no other place where the caps for the rails could be procured. The New York Central Railroad Company refused to extend the time of performance of the contract made by it with the plaintiff. He was unable to perform it, solely by reason of the defendant's failure to deliver, and the plaintiff lost his contract and the profits he would have made on it. At the time of making the contract with the plaintiff the defendant was informed that the plaintiff had a contract with the New York Central Railroad Company for the four hundred tons of rails, which were to be delivered by June 1st; and that the caps were wanted to make those rails; but was not informed of the price the plaintiff was to receive for such rails.

The referee found the facts as above stated, and decided, as a conclusion of law, that the plaintiff was entitled to recover the profits he would have made on his contract with the railroad company, being $9,100, with interest.

The defendant filed no exceptions to the findings of fact, but excepted to the conclusions of law.

*Geo. F. Danforth*, for appellant. The facts constitute a legal excuse for non-performance. *Taylor* v. *Caldwell*, 113 Eng. Com. Law, 826; *Appleby* v. *Myers*, Law Rep., 2 C. P. 651; *Boast* v. *Firth*, id., 4 C. P. 1; *Robinson* v. *Davison*, 6 Law Rep. Ex. Cas. 269; *Wolfe* v. *Howes*, 24 Barb. 174, 666; S. C., 20 N. Y. 197; *Price* v. *Hartshorn*, 44 id. 103; *Cohen* v. *N. Y. Mut. Life Ins. Co.*, 50 id. 610; *Worth* v. *Edmonds*, 52 Barb. 40. The defendant, for a breach on its part, would be liable only for the difference between the contract price and the value of the caps at its mill, at the time when, by the terms of the contract, they should have been delivered. *Baker* v. *Drake*, 53 N. Y. 211; *Hanslip* v. *Padwick*, 5 Exch. 615; *Fessler* v. *Love*, 48 Penn.

St. 410; 2 Pars. Cont. 459; *Ward* v. *N. Y. Central R. R. Co.*, 47 N. Y. 34. The facts found do not justify the allowance of the expected profits as damages. Benj. on Sales, 729; Morgan on Damages (2d ed.), 10, 20; *Smeed* v. *Foord*, 1 Ellis & Ellis, 602 (102 Eng. C. L. Rep.); *Cory* v. *Thames Iron Works*, 3 Q. B. 181, Law Rep.; *British Columbia Saw-mill Co.* v. *Nettleship*, Law Rep., 3 C. P. Cas. 499; *Horne* v. *Midland Railway Co.*, Law Rep., 7 C. P. 583; S. C., 8 id. 131; *Fessler* v. *Love*, 48 Penn. St. 411; *Fleming* v. *Beck*, id. 312; *Converse* v. *Burrows*, 2 Minn. 229; *Messmore* v. *Shot and Lead Co.*, 40 N. Y. 422; *Cassidy* v. *LeFevre*, 45 id. 568; *Baldwin* v. *U. S. Telegraph Co.*, id. 749.

*J. B. Perkins* and *W. F. Cogswell*, for respondent. The fact that the defendant was prevented by fire from performing the contract is no defense. *Harmony* v. *Bingham*, 12 N. Y. 99; *Tompkins* v. *Dudley*, 25 id. 272; *Niblo* v. *Binsse*, 44 Barb. 54. There was no waiver of the damages. *Borries* v. *Hutchinson*, 18 C. B. (N. S.) 445. The plaintiff is entitled to recover as damages what he would have made on the contract with the New York Central Railroad Company if the defendant had performed. *Griffin* v. *Colver*, 16 N. Y. 489; *Borries* v. *Hutchinson*, 18 C. B. (N. S.) 445; *Wilson* v. *Newport Dock Co.*, L. R., 1 Ex. 177. All the cases hold that where the vendor has express notice of the use to which the commodity is to be put, or of any contract for a re-sale, then the loss of profits on such contract can be covered on a breach. *Hadley* v. *Baxendale*, 9 Exch. 341; 26 Law & Eq. 398; *Griffin* v. *Colver*, 16 N. Y. 489; *Passenger* v. *Thorburn*, 35 Barb. 17; S. C., 34 N. Y. 634; *Starbird* v. *Barrons*, 38 id. 230; *Messmore* v. *N. Y. Shot and Lead Co.*, 40 id. 422; *Randall* v. *Raper*, 96 Eng. Com. Law, 82; *Corry* v. *Thames Iron Works*, L. R., 3 Q. B. 181; *France* v. *Gandet*, 6 id. 199.

GILBERT, J. The contract made by the defendants is absolute and unqualified. At the time it was made it was not impossible to perform it. They are therefore liable for a breach thereof, notwithstanding subsequent occurrences rendered performance impossible. The reason is, that it was their own fault to run the risk of undertaking to perform an impossibility, when they might have provided against it by their contract. In such cases performance is not excused by the occurrence of an inevitable accident or other contingency, although it was not foreseen by or within the control of the party. It is not disputed that such is the rule of the common law.

Cases have arisen, however, where from the nature of the contract it was apparent that the parties contracted on the basis of the continued existence of a particular person or thing being the subject of the contract, and where for that reason the court implied a condition that if the performance should become impossible from the perishing of the person or thing, performance should be excused. *Taylor* v. *Caldwell*, 3 B. & S. 826; *Dexter* v. *Norton*, 47 N. Y. 62. These cases are examples where the court has annexed such a condition to contracts. The principle on which it was done and the authorities in support of it are mentioned in them. We need only say of them, that they do not purport to create exceptions to the general rule, but to give effect to the agreement of the parties as inferred from the written instrument, the subject-matter thereof, and the situation of the parties at the time it was made. None of them have gone so far as to excuse a man from performing his contract, because the means which he had provided to enable him to perform it had been destroyed by fire. We think it would be contrary to law to annex an implied condition of that kind to the contract in this case. Our duty is not to make contracts but to enforce them. *Oakley* v. *Morton*, 11 N. Y. 25; *Harmony* v. *Bingham*, 12 id. 107; *Tompkins* v. *Dudley*, 25 id. 272.

The fact that the caps could not be made elsewhere than at the defendants' mill has, we think, no bearing on the case. They agreed absolutely to make them. The contingency of being deprived of the means whereby they were to be made was not provided against. The destruction of those means was their misfortune, and it would be unjust to transfer it from them to the plaintiff. Nor did the phrase in the contract "agree to make and deliver at their mill," etc., impose any restriction as to the place of making. It merely fixed the place of delivery.

If these views are correct, the defendants became liable to pay such damages as the plaintiff has sustained by reason of their breach of the contract. Upon this subject it appears from the findings of the referee that the defendants were apprised that the plaintiff had agreed to supply the New York Central Railroad Company with a quantity of rails, and that the caps which they agreed to make were to form a part of such rails, and were necessary to enable him to fulfill that contract; that neither the caps nor the rails had any market value; and that the caps, apart from the combination in which alone they were designed for use, were worth little if

any more than the material of which they were composed. It was also found by the referee that in consequence of the non-performance by the defendants of their contract, and for that reason only, the plaintiff was prevented from performing his contract with the railroad company, and that the profits which would have accrued to the plaintiff, if he had performed the same, amounted to the sum for which the referee rendered judgment against the defendants.

We regard the rule as settled in this State, that a plaintiff is entitled to recover such profits. *Griffin* v. *Colver*, 16 N. Y. 489. Where it is shown that the contract with the defendant was entered into for the express purpose of enabling the plaintiff to fulfill a previous contract made by himself with another party; or where the defendants had notice of the use to which the commodity they agreed to supply was to be put; or of a contract for a resale of it, then the loss of profits is to be deemed the damages, which are the natural consequence of the breach of the contract, and such as the parties had in contemplation as the probable result of such breach. *Griffin* v. *Colver*, *supra*; *Passenger* v. *Thorburn*, 34 N. Y. 634; · *Messmore* v. *N. Y. Shot Co.*, 40 id. 422; *Hadley* v. *Baxendale*, 9 Exch. 341, 353; *Borries* v. *Hutchinson*, 13 C. B. N. S. 445; *Waters* v. *Towers*, 8 Exch. 401; *Corry* v. *Thames Iron Works*, L. R., 3 Q. B. 181; *France* v. *Gandet*, L. R., 6 Q. B. 199; *Wilson* v. *Newport Dock Co.*, L. R., 1 Exch. 177, per MARTIN, B.

It is urged that the rule of damages stated does not apply because the defendants were not apprised of the price which the railroad company agreed to pay for the rails. There would have been great force in this objection if it had appeared that the caps had a market value. In such a case the difference between the price agreed to be paid, and the value at the time and place of delivery, would ordinarily be the measure of damages, and the defendants would not be liable for any greater sum, unless the plaintiff had expressly notified them of the resale at a higher price. But when the goods to be supplied have not a market value, and there has been a resale of them at a profit, such profit is as fixed a rule of damages as the other. In this case it is apparent that the plaintiff could not indemnify himself against the consequences of the defendants' breach by procuring other caps, and they had no market value. This was known to the defendants before they made their contract. They must have known, therefore, that their liability in case of a breach would be the actual damages sustained by the plaintiff, by reason of his

inability to realize the profits certainly to accrue upon his contract with the railroad company occasioned by such breach, and such is the legal presumption. The plaintiff was under no obligation to communicate the exact or the probable amount of these profits as a condition of recovering that to which the law entitled him. The most that a purchaser is bound to do is to abstain from misleading the seller by allowing him to rest in the belief that he is assuming one measure of liability, when upon the assumption that he knew all the facts attending the transaction, the extent of that liability would be increased; and such we understand to be the principle of the cases on this subject to which we have been referred. Chit. on Cont. (11th Am. ed.) 1324, 1325.

It is also insisted that it is not certain that the plaintiff would have realized the profits allowed him in case the contract had been performed.

The fact that the profits allowed would have been the result of the complete rail, and not of the caps alone, ought not, as it seems to us, to affect the defendants' liability. The referee has found that the failure of the defendants to supply the caps was the sole cause of the loss of profits which ensued, and those profits are ascertained by deducting all expenses incident to supplying the other materials composing the rail. Certainly there is no inherent difficulty in tracing the entire loss to the failure of the defendants, although the concurring acts of others were necessary to prevent such loss. If the others were ready to perform, and the defendants were not, as we must assume, then the loss is attributable solely to the failure of the latter. Being the sole cause of the loss, they are solely responsible for it. The profits which are not recoverable as damages are such as are contingent upon future bargains or speculations, or states of the market, and not the gain which the plaintiff would have realized if the contract had been performed. *Fox* v. *Harding*, 7 Cush. 516; *Philadelphia, etc., R. R. Co.* v. *Howard*, 13 How. (U. S.) 307, 344; *Griffin* v. *Colver, supra.*

We find no error in the rulings of the referee upon the trial.

The judgment should be affirmed, with costs.

SMITH, J., dissented, on the cases of *Dexter* v. *Norton*, 47 N. Y. 65, and *Taylor* v. *Caldwell*, 113 Eng. Com. Law, 824.

*Judgment affirmed.*